**Oral Argument Not Yet Scheduled**

## No. 13-7157

_____

## UNITED STATES COURT OF APPEALS
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

_____

JOEL BUCHWALD, in his capacity as the Executor of the Estate of
ARTHUR BUCHWALD,

*Plaintiff-Appellant*,

*v.*

CITIBANK, N.A.,

*Defendant-Appellee.*

_____

On Appeal from the United States District Court
for the District of Columbia,
Case No. 1:13-cv-00210-RLW
The Honorable Robert L. Wilkins, United States District Judge

_____

## OPENING BRIEF OF THE PLAINTIFF-APPELLANT

_____

CUNEO GILBERT & LADUCA, LLP
Jonathan W. Cuneo
Matthew E. Miller
507 C Street, NE
Washington, DC 20002
(202) 789-3960

*Counsel for Plaintiff-Appellant*

### IN THE UNITED STATES COURT OF APPEALS
### FOR THE DISTRICT OF COLUMBIA CIRCUIT

| | |
|---|---|
| JOEL BUCHWALD, in his capacity as the Executor of the Estate of ARTHUR BUCHWALD, <br><br>     Plaintiff-Appellant <br><br>     v. <br><br> CITIBANK, N.A., <br><br>     Defendant-Appellee. | No. 13-7157 |

## CERTIFICATE AS TO PARTIES, RULINGS AND RELATED CASES

### I.  Parties

#### A.  Plaintiff-Appellant

Plaintiff is Joel Buchwald, in his capacity as executor of the estate of Arthur Buchwald.  Plaintiff is represented by the following (undersigned) counsel:

> Jonathan W. Cuneo
> Matthew E. Miller
> CUNEO GILBERT & LaDUCA, LLP
> 507 C Street, NE
> Washington, DC 20002
> Phone:  (202) 789-3960
> jonc@cuneolaw.com, mmiller@cuneolaw.com

**B. Defendant-Respondent**

Defendant-Respondent Citibank, N.A., represented by:

> Virginia W. Barnhart
> TREANOR, POPE & HUGHES, P.A.
> 500 York Road
> Towson, MD 21204
> 410) 494-7777
> vwbarnhart@tph-law.com

## II. Rulings

The rulings appealed from are the Court's "Order" entered May 1, 2013, and "Order" entered September 17, 2013.

## III. Related Cases

Plaintiff-Appellant is not aware of any cases related to the actions that are the subject of this appeal.

Dated:  November 8, 2013                     Respectfully submitted,

                                                _____/s/ Matthew E. Miller_____
                                                Jonathan W. Cuneo
                                                Matthew E. Miller
                                                CUNEO GILBERT & LaDUCA, LLP
                                                507 C Street, NE
                                                Washington, DC 20002
                                                Phone:  (202) 789-3960

                                                *Attorneys for Plainitff-Appellant*

# TABLE OF CONTENTS

CERTIFICATE AS TO PARTIES, RULINGS AND RELATED
CASES…………………………………………………………………………..i

TABLE OF CONTENTS ......................................................................... iii

TABLE OF AUTHORITIES .....................................................................v

I.    JURISDICTIONAL STATEMENT ................................................1

II.   STATEMENT OF ISSUES FOR REVIEW ...................................1

III.  STATEMENT OF THE CASE.......................................................2

   A.   Background ............................................................................2

   B.  The HELOC ............................................................................4

   C.  The Administration of the Buchwald Estate....................................7

   D.  Pertinent Procedural History and Recent Events............................8

IV.  SUMMARY OF THE ARGUMENT .............................................10

V.   ARGUMENT ...............................................................................11

   A.   Standard of Review ...............................................................11

   B.   The District Court Erred in Holding that Plaintiff's Negligence Claim Was
   Barred, on the Pleadings, by Limitations ............................................11

   C.  The District Court Erred in Denying Plaintiff Leave to File the Proposed
   FAC ........................................................................................17

      1.  The District Court Was Required, When Faced With a Timely Motion
      Under Rules 59(e) and 15(c) to Grant Leave to File a Non-Futile Complaint 18

      2.  The Proposed FAC Was Not Futile .........................................20

a.  The Additional Proffered Factual Allegations Cured any Defect in the Negligence claim ........................................................................................20

b.  The District Court Erred in Holding that Plaintiff Lacked Standing to Bring the Proposed Declaratory Judgment Claim ......................................22

VI.  CONCLUSION................................................................................................26

CERTIFICATE OF COMPLIANCE………………………………………………..27

CERTIFICATE OF SERVICE………………………………………………….....28

iv

## TABLE OF AUTHORITIES

**Cases**

*A.I. Trade Fin., Inc. v. Petra Int'l Banking Corp.,* 62 F.3d 1454(D.C. Cir. 1995) .11, 12

*Aiello v. Aiello,* 447 Mass. 388 (2006) ...................................................................15

*Atherton v. D.C. Office of the Mayor,* 567 F.3d 672 (D.C. Cir. 2009)...................21

*BCCI Holdings (Luxembourg), S.A. v. Clifford,* 964 F. Supp. 468 (D.D.C.1997) ..16

*\*Belizan v. Hershon*, 434 F.3d 579 (D.C. Cir. 2006) ....................................... 18, 19

*\*Berry v. Myslinski*, 2012 WL 6178157 (Mich. App. Dec. 11, 2012) ...................24

*Bornstein v. Poulos,* 793 F.2d 444 (1st Cir.1986) ................................................16

*Bremer v. Williams,* 210 Mass. 256, 96 N.E. 687 (1911).......................................15

*Byers v. Burleson,* 713 F.2d 856 (D.C. Cir. 1983) ................................................13

*\*Caribbean Broadcasting System, Ltd. v. Cable & Wireless P.L.C.*, 148 F.3d 1080 (D.C. Cir. 1998) ........................................................................................... 19, 20

*City of Dania Beach, Fla. v. FAA,* 485 F.3d 1181 (D.C.Cir.2007) ........................23

*Cole v. Mileti*, 133 F.3d 433 (6th Cir.1998) ..........................................................12

*Commonwealth v. Steinberg*, 404 Mass. 602, 536 N.E.2d 606 (1989)...................13

*Demoulas v. Demoulas Super Markets, Inc.*, 424 Mass. 501 677 N.E.2d 159 (1997) ..................................................................................................................... 15, 16

*Ekstrom v. Value Health, Inc.*, 68 F.3d 1391 (D.C. Cir. 1995) ..............................12

*English v. District of Columbia*, 717 F.3d 968 (D.C. Cir. 2013)............................11

*Fed. Deposit Ins. Corp. v. Shrader & York,* 991 F.2d 216 (5th Cir.1993) ..............16

v

*Federal Deposit Ins. Corp. v. Petersen,* 770 F.2d 141 (10th Cir.1985) ................12

*\*Firestone v. Firestone*, 76 F.3d 1205 (D.C. Cir. 1996) ................................. 11, 19

*Foman v. Davis*, 371 U.S. 178 (1962) ....................................................11

*Gluck v. Unisys Corp.*, 960 F.2d 1168 (3d Cir.1992)..............................................12

*Hancock v. Homeq Servicing Corp.*, 2007 WL 1238746 (D.D.C. Apr. 27, 2007)..14

*IIT v. Cornfeld*, 619 F.2d 909 (2d Cir. 1980)...........................................16

*In re Greater Southeast Community Hosp. Corp. I*, 353 B.R. 324 (Bankr. D.D.C. 2006).............................................................................................16

*Jacobsen v. Oliver,* 201 F. Supp. 2d 93 (D.D.C. 2002)...........................................13

*LaRoque v. Holder*, 650 F.3d 777 (D.C. Cir. 2011) ................................................21

*Mama Cares Foundation v. Nutriset Societe Par Actions Cimplifiee*, 825 F.Supp.2d 178 (D.D.C. 2011) ...............................................................22

*Mosesian v. Peat, Marwick, Mitchell & Co.,* 727 F.2d 873 (9th Cir.1984), *cert. denied,* 469 U.S. 932 (1984) ...............................................................16

*New England Tel. & Tel. Co. v. Gourdeau Const. Co., Inc.*, 419 Mass. 658, 647 N.E.2d 42 (Mass. 1995) ......................................................................12

*O'Keefe v. Darnell*, 192 F.Supp.2d 1351 (M.D. Fla. 2002).....................................15

*Passatempo v. McMenimen*, 461 Mass. 279, 960 N.E.2d 275 (2012)....................16

*\*Pierce v. Emigrant Mortg. Co.*, 463 F.Supp.2d 221 (D. Conn. 2006)..................24

*Ramirez v. Dep't of Justice,* 594 F. Supp. 2d 58 (D.D.C. 2009)..............................13

*Republic of Venezuela v. Philip Morris Inc.*, 287 F.3d 192(D.C. Cir. 2002) ..........25

*Resolution Trust Corp. v. Farmer*, 865. 1143 (E.D. Pa. 1994) ...............................16

*Resolution Trust Corp. v. Gardner,* 798 F.Supp. 790 (D.D.C.1992) ......................16

*Rollins v. Wackenhut Servs., Inc.*, 703 F.3d 122 (D.C. Cir. 2012) .........................20

*SanDisk Corp. v. STMicroelectronics,* 480 F.3d 1372 (Fed.Cir.2007) ..................22

*Seed Co., Ltd. v. Westerman*, 2012 WL 28521 (D.D.C. Jan. 5, 2012) ....................13

*Shaffer v. Defense Intelligence Agency*, 601 F.Supp.2d 16 (D.D.C. 2009).............23

*\*Shirley v. Wachovia Mortg. FSB*, 2011 WL 855943 (N.D. Cal. Mar. 9, 2011) ....24

*Simmons v. Friday*, 359 Mo. 812, 224 S.W.2d 90 (1949) ................................ 15, 17

*Singh v. Napolitano,* 710 F.Supp.2d 123 (D.D.C.2010).........................................23

*Stilwell v. Office of Thrift Supervision,* 569 F.3d 514 (D.C.Cir.2009) ...................23

*Taygeta v. Varian,* 436 Mass. 217, 763 N.E.2d 1053 (2002) ..................................14

*Ten Persons of the Commonwealth v. Fellsway Development, LLC*, 460 Mass. 366,
   951 N.E.2d 648 (2011) .......................................................................................25

*Yager v. Liberty Royalties Corp.*, 123 F.2d 44 (10th Cir. 1941) .............................15

**Statutes**

28 U.S.C. § 1447(c) .................................................................................................25

28 U.S.C. § 2201(a) .................................................................................................22

28 U.S.C. §§ 1332 (a)(1)............................................................................................1

D.C. Code § 12-301(8)..............................................................................................13

M.G.L. c. 260 §2A ...................................................................................................13

vii

# I.     JURISDICTIONAL STATEMENT

The district court had jurisdiction over the action below pursuant to pursuant to 28 U.S.C. §§ 1332 (a)(1), as the dispute is between a resident of the District of Columbia and a nationally chartered banking association with its nominal headquarters in South Dakota and principal place of business in New York, and the amount in controversy exceeds $75,000.00.

On May 1, 2013, the district court entered an order granting a motion to dismiss the Complaint.  A-90.

On May 29, 2013, Plaintiff-Appellant filed a motion pursuant to Fed. R. Civ. P. 59(a) and Fed. R. Civ. P. 15(a), seeking an order modifying the judgment and granting leave to file the proposed First Amended Complaint (the "Proposed FAC").  A-92.

On September 17, 2013, the district court entered an order denying the postjudgment motion filed pursuant to Fed. R. Civ. P. 59(a) and Fed. R. Civ. P. 15(a).  A-184.

Plaintiff filed a Notice of Appeal on September 30, 2013.  A-185.

# II.     STATEMENT OF ISSUES FOR REVIEW

1.     Did the district court mistakenly hold that Estate's negligence claim could not possibly be tolled during the domination of the Estate by Kenneth Starr?

2.     Did the district court mistakenly deny Plaintiff leave to file the

1

Proposed FAC?  Specifically, (a) was it an abuse of discretion for the district court to deny Plaintiff leave to file a non-futile amended complaint, and   (b) did the proposed FAC state actionable claims of (i) negligence, and (ii) a count seeking a declaring the HELOC null and void?

## III.    STATEMENT OF THE CASE

### A.  Background

Arthur Buchwald ("Buchwald"), who passed away on January 17, 2007, was a successful humorist and newspaper columnist.   Complaint, ¶ 3, A-6.

In the 1980s, Buchwald retained the firms of Starr and Company, LLC ("Starrco") and/or Starr Investment Advisors, LLC ("SIA"), and their principal, Kenneth Starr ("Starr") to provide financial advisory and other financial services. Complaint, ¶ 4, A-6.  Starr served as financial advisor to several entertainers and other celebrities.  *Id.*  Starr and the business entities he controlled came to manage all of Buchwald's investments.  *Id.*

By 2005, Buchwald was in very poor health.  *Id.*, ¶ 6, A-7.  In the fall of 2005, Buchwald was told by his doctors that he would have to go on dialysis as his kidneys were failing. He started dialysis in December 2005. *Id.*  In or around December 2005, Buchwald  suffered an embolism in his leg, which required the amputation of his leg below the knee, which occurred in December 2005. *Id.*  Six

weeks after the amputation, Buchwald elected to discontinue dialysis, and elected

to enter hospice care, which began on February 3, 2006. *Id*.

The decline in Buchwald's health was well known in the public realm. This

was due in part to his celebrity. *Id*., ¶ 7, A-7. But it was also due to the fact that

Buchwald chose to directly and publicly confront his own mortality by

incorporating it as a central theme of his writings and media appearances. *Id*. He

confronted his impending death as he had addressed other matters -- everything

from the most mundane aspects of everyday life to the great issues of our time --

with his unique insight and humor. *Id*.

Buchwald invited radio talk show presenter Diane Rehm to interview him.

During the show, which aired on February 24, 2006, he revealed his decision to

discontinue hemodialysis, which had previously been initiated to treat renal failure

secondary to diabetes mellitus. *Id*., ¶ 8, A-7. He described his decision as his "last

hurrah," stating that, "If you have to go, the way you go is a big deal." *Id*. He

reported that he was "very happy with his choices" and was eating at McDonald's

on a regular basis. *Id*.

Buchwald was later interviewed with Miles O'Brien of CNN in a segment

aired on March 31, 2006. *Id*., ¶ 9, A-8. Buchwald discussed his living will,

which documents his wishes for his doctors not to revive him if he fell into a coma.

*Id*. As of the date of that interview, Buchwald was still writing his periodic

3

column in THE WASHINGTON POST. In the interview, he described a dream in which he was waiting to take his "final plane ride." *Id.*

Unexpectedly, Buchwald's kidneys stabilized sufficiently enough that he could function, even though he was now an amputee. *Id.*, ¶ 10, A-8. He left hospice care in June 2006. Buchwald spent the summer of 2006 at a residence ("the Martha's Vineyard Property") he owned in Vineyard Haven, Massachusetts. There, he completed a book titled *Too Soon to Say Goodbye*, about the time he spent in hospice care. *Id.*

In the Fall of 2006, Buchwald's kidneys were beginning to fail again. *Id.*, ¶ 11, A-8. He was getting weaker and weaker, but was still able to function with a great deal of help. *Id.* Buchwald's renal failure began to overpower his body and other organs were beginning to fail as a result. *Id.* He slept more and more and the amount of time where he was truly cognitive and completely aware became shorter and shorter, with large time periods where he was not aware of his surroundings. *Id.*

### B. The HELOC

By October 2006, during this time of rapid decline in Buchwald's health, Starr and certain officers and employees of SIA and/or Starrco, had devised a scheme to extract cash from equity that Buchwald owned in the Martha's Vineyard Property. *Id.*, ¶ 12, A-8. Their plan was to cause Buchwald to obtain a home

4

equity line of credit ("HELOC") secured by the Martha's Vineyard Property, and to embezzle funds that would later be advanced by lender. *Id*.

By November 1, 2006, Starr and his employees, Arlene Graff and Patricia Dorn, had obtained the approval of Citibank to open a HELOC on the Martha's Vineyard Property. *Id*., ¶ 13, A-8. Buchwald was not aware, and certainly had not approved, of the application for the HELOC. *Id*.   He had no plausible reason to seek a HELOC on the Martha's Vineyard Property. *Id*.

By November 1, 2006, Starr's employees, Arlene Graff and Patricia Dorn had prepared a set of documents in order to apply for a HELOC on Buchwald's behalf. *Id*., ¶ 14, A-9.   Among the documents prepared by Mmes. Graff and Dorn were a "Massachusetts General Durable Power of Attorney" (the "POA"), which appears to have been executed by someone on or about November 29, 2006.   *Id*. The POA purports to effect the appointment by Buchwald of Dorn as his attorney-in-fact, (1) generally as to real estate and financial transactions, and (2) more specifically, as to a specific HELOC, approved by Citibank, on the Martha's Vineyard Property.   *Id*.

The POA was not executed by Buchwald.  *Id*., ¶ 15, A-9.  Buchwald was in New York on two occasions in late November and early December 2006, to attend parties for the release of his book.  *Id*., ¶ 16, A-9.  He was accompanied by the Plaintiff, who was with him at all times.  *Id*.    His personal assistant accompanied

5

him as well.  Buchwald's blood toxicity levels had risen, which made him
aggressive and agitated at times, to the point where, even at the foregoing parties,
would periodically fall asleep while people were talking to him, and would wake
up yelling at whomever was in front of him.  *Id*.   While Buchwald had retained
his humor (which was his livelihood) and was able to carry a conversation, it is
doubtful that he would have been capable of understanding the transaction
arranged by Starr and his associates, even if one of them had attempted to explain
it to him.  *Id*.

  On his first of two trips to New York, Buchwald and the Plaintiff had lunch
with Starr.  The Plaintiff told Starr that this was probably the last time that Starr
would see Buchwald, as he was slowly dying.  *Id*., ¶ 17, A-9.   During the same
trip Starr sent certain of his associates to the Regency Hotel to have Buchwald sign
certain documents.  *Id*. , ¶ 18, A-9.  Starr did not inform Buchwald, nor the
Plaintiff, that he was taking a HELOC out on the Martha's Vineyard property nor
did explain what the documents were.  *Id*.   Plaintiff told Starr's associates that
Buchwald was asleep, and they left without getting any documents signed.  *Id*.
They did not make another attempt to procure his signature on any documents.  *Id*.

  Buchwald's purported signature on the POA was illegible.  *Id*., ¶ 20, A-10.
If any person reviewing the document had compared it with prior exemplars of his
signature, it would have been obvious that either (1) the signature was not

6

Buchwald's, or (2) he was gravely impaired when executing the document. *Id.*
Second, the date entered at the bottom of the POA made no sense. The date reads
"the  28  day of <u>Nov 29</u>, 20__." *Id.*, ¶ 21, A-10. That is not a date. Third, the
document is styled as a "Massachusetts Durable Power of Attorney" and expressly
provides that it was "EXECUTED IN THE COMMONWEALTH OF
MASSACHUSETTS." *Id.*, ¶ 22, A-10. It was notarized, however, by a New
York notary, who, as a matter of public record, was an investment advisor and
attorney employed by Starrco. *Id.*

Starr and/or his subordinates later effected $100,000 in advances from the
HELOC. Neither Buchwald nor his estate received any benefit from the funds
advanced to Starr and Dorn. *Id.*, ¶¶ 24-28, A-11.

## C. The Administration of the Buchwald Estate

On or about February 16, 2007, Starr was appointed by the Probate Division
of the Superior Court of the District of Columbia as executor of the Buchwald's
Estate (the "Estate"). *Id.*, ¶ 29, A-11. At all times that Starr served as Executor of
the Estate, Starr was, in fact, acting in his own personal interests, and not in the
interests of the Estate. *Id.*

During 2010, it became public knowledge that Starr and his confederates
had operated a Ponzi Scheme, and had defrauded many investors. In May 2010,
Starr was indicted and arrested on 23 criminal counts including various fraud

charges and money laundering. *Id.*, ¶ 30, A-11.   On March 3, 2011, following a

guilty plea, Starr was sentenced to 7 ½ years in prison.  *Id.*

In 2010, Plaintiff retained counsel and petitioned the Probate Division to

succeed Mr. Starr as Executor.   *Id.*, ¶ 31, A-12.  On December 20, 2010, Starr

resigned as Executor. *Id.*   On January 7th, 2011, the Probate Division entered

Letters of Administration appointing Plaintiff as Executor of the Estate.   *Id.*

After his appointment as Executor, Plaintiff investigated Buchwald's various

financial transactions involving Starr, both those occurring prior to Buchwald's

death, as well as the transactions of the Estate that had occurred during the

supervision of that Estate by Starr.   *Id.*, ¶ 32, A-12.   Prior to the public revelation

in 2010 of the Ponzi Scheme effected by Starr, Plaintiff and his family had no

reason to investigate Buchwald's financial transactions nor the administration of

the Estate by Starr.   *Id.*

### D.  Pertinent Procedural History and Recent Events

This action was commenced by Plaintiff, in the Superior Court for the

District of Columbia on January 7, 2013.  Plaintiff, in his capacity as Executor of

the Estate, brought a single claim of negligence against Citibank, alleging that

Citibank acted negligently in extending the HELOC to the Estate.

It is a matter of public record, and not disputed, that Plaintiff paid off the

HELOC in full in January 2013, shortly after this action was commenced, in

8

conjunction with the sale the Property.

Citibank removed the action to the district court on February 18, 2013. On February 26, 2013, Citibank filed a motion to dismiss the complaint for failure to state a claim upon which relief could be granted. A-14. On May 1, 2013, the district court entered an order granting the motion to dismiss. A-90.

On May 29, 2013, Plaintiff-Appellant filed a motion pursuant to Fed. R. Civ. P. 59(a) and Fed. R. Civ. P. 15(a), seeking an order modifying the judgment and granting leave to file the Proposed FAC. A-91.

In the FAC, Plaintiff sought to make three pleading amendments.

First, Plaintiff added additional factual allegations pertinent to the previously pleaded negligence claim, and particularly relevant to whether the statute of limitations should be tolled as to Citigroup for the duration of Starr's executorship.

Second, Plaintiff sought to plead an additional claim seeking a declaratory judgment that the HELOC was null and void as a matter of law, a claim subject to a longer period of limitations.

Third, Plaintiff sought to plead that he paid off the HELOC in reliance upon express representations by Citibank that payment of the HELOC would not constitute a waiver of any claims belonging to the Estate.

On September 17, 2013, the district court entered an order denying the postjudgment motion filed pursuant to Fed. R. Civ. P. 59(a) and Fed. R. Civ. P.

9

15(a).  A-184.  The district court held that Proposed FAC was futile, and did not state a claim.  *Id.*

    Plaintiff filed a Notice of Appeal on September 30, 2013.  A-185.

## IV.   SUMMARY OF THE ARGUMENT

    The district court erred in holding that the Estate's negligence claim was barred, on the pleadings, by limitations.  The Estate's claim is timely, because it was tolled during the pendency of Kenneth Starr's adverse domination of the Estate.  Claims are tolled under trust law when no person was capable of bringing the claim, as informed by the analogous "adverse domination" doctrine.  *See infra at pp. 15.*

    The district court erred in denying Plaintiff's Motion, pursuant to Fed. R. Civ. P. 59(a) and 15(a), for leave to file the Proposed FAC.  It is well-settled within this Circuit that, when presented with a motion for leave to file a non-futile complaint, even after an adverse judgment, it is an abuse of discretion to deny leave absent other specific grounds (such as prejudice or delay).  *See infra at pp.18.*

    The Proposed FAC was not futile.  Additional proffered factual allegations cured any deficiency in the negligence count.  There was a sufficient case or controversy to afford the district court jurisdiction over the proposed declaratory count.  The claim was not rendered moot by the satisfaction of the instrument, as it

10

is well settled that the payment of an instrument does not render moot an action to have it declared null and void.  *See infra at pp. 23.*

## V.     ARGUMENT

### A.     Standard of Review

The review of an order granting a motion to dismiss with prejudice under Fed. R. Civ. P. 12(b)(6) presents a question of law that is reviewed de novo. *English v. District of Columbia*, 717 F.3d 968, 971 (D.C. Cir. 2013). A district court's refusal to vacate or modify a judgment under Federal Rule of Civil Procedure 59(e) is reviewed under an abuse of discretion standard.  *Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996).  But it is an abuse of discretion, as a matter of law, to deny leave to amend (before or following dismissal), unless there is sufficient reason, such as "undue delay, bad faith or dilatory motive ... repeated failure to cure deficiencies by [previous] amendments ... [or] futility of amendment."  Id. (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

### B.     The District Court Erred in Holding that Plaintiff's Negligence Claim Was Barred, on the Pleadings, by Limitations

In a diversity action, the forum's choice of law rules, including its choice of law rules as to statutes of limitations, apply.  *E.g., A.I. Trade Fin., Inc. v. Petra Int'l Banking Corp.,* 62 F.3d 1454, 1458 (D.C. Cir. 1995).  In D.C., statutes of

limitations are considered procedural, meaning that the statutes of limitations of the forum will generally apply.  *Id.* at 1458.

The POA contains a choice of law clause providing that Massachusetts law applies to disputes arising under that instrument.  A-31.

This Court has held that "[a]bsent an express statement of intent, a standard choice of law provision such as this one will not be interpreted as covering a statute of limitation." *Ekstrom v. Value Health, Inc.*, 68 F.3d 1391, 1395 (D.C. Cir. 1995) (quoting  *Federal Deposit Ins. Corp. v. Petersen,* 770 F.2d 141, 142-43 (10th Cir.1985)).  *Accord, e.g., Cole v. Mileti*, 133 F.3d 433, 437 (6th Cir.1998) ("Contractual choice-of-law clauses incorporate only substantive law, not procedural provisions."); *Gluck v. Unisys Corp.*, 960 F.2d 1168, 1179 (3d Cir.1992) (holding that contractual choice-of-law provisions do not apply to statutes of limitations in jurisdictions that deem such provisions to be procedural for the purposes of the choice-of-law analysis).

But a choice of law clause will also incorporate the statute of limitations of the specified jurisdiction when that jurisdiction would consider the statute of limitations to be substantive, rather than procedural.  *Ekstrom, Inc.*, 68 F.3d at 1394-95.  Massachusetts considers statutes of limitations to be substantive.  *New England Tel. & Tel. Co. v. Gourdeau Const. Co., Inc.*, 419 Mass. 658, 647 N.E.2d 42, 46 (Mass. 1995).  Accordingly, the Massachusetts statute of limitations applies.

12

Massachusetts has a three-year statute of limitations for a claim of negligence.[1]  M.G.L. c. 260 §2A.  The statute of limitations is an affirmative defense for which the defendant bears the burden of proof.  *Commonwealth v. Steinberg*, 404 Mass. 602, 606, 536 N.E.2d 606 (1989) (under Massachusetts law).  *Accord Seed Co., Ltd. v. Westerman*, 2012 WL 28521, at *6 (D.D.C. Jan. 5, 2012) (under D.C. law).

"Because statute of limitations issues often depend on contested questions of fact," it is well-settled "the Court may grant a motion to dismiss as untimely only if the complaint on its face is conclusively time-barred . . . or if no reasonable person could disagree on the date on which the cause of action accrued." *Ramirez v. Dep't of Justice,* 594 F. Supp. 2d 58, 62–63 (D.D.C. 2009)(citations and internal quotation marks omitted); s*ee also Byers v. Burleson,* 713 F.2d 856, 861 (D.C. Cir. 1983) (the point in time at which the plaintiff knew or reasonably should have known is normally a question of fact for a jury, and a trial judge should only make this determination as a matter of law if no reasonable person could disagree on this date);  *Jacobsen v. Oliver,* 201 F. Supp. 2d 93, 109 (D.D.C. 2002) (defendants "bear a heavy burden" when moving to dismiss based on a statute of limitations defense).

---

[1] We note, in an abundance of caution, that the District of Columbia also has a three year statute of limitations.  D.C. Code § 12-301(8).

Under Massachusetts' discovery rule, the limitations period is tolled "until a plaintiff knows, or reasonably should have known, that it has been harmed or may have been harmed by the defendant's conduct." *Taygeta v. Varian,* 436 Mass. 217, 229, 763 N.E.2d 1053 (2002). In the matter at bar, the Plaintiff brings this action solely in a representative capacity, as the Executor of the Estate. The real "claimant," then, for purposes of the discovery rule, is the Estate, not the Plaintiff. Where claim is brought by the executor of an estate in a representative capacity then, the "issue is when [the decedent] or the executors of her estate… were put on notice of the wrongdoing they allege"). *See Hancock v. Homeq Servicing Corp.*, 2007 WL 1238746, *5 (D.D.C. Apr. 27, 2007).

The tortious conduct occurred in late 2006, and the injury had occurred by January 2007. Plaintiff concedes that the Executor of the Estate who was in place between February 2007 and December 2010 had full knowledge of the injury and its cause in fact, and knew about all of the facts pertinent to the wrongdoing, and that he had this knowledge at the time he became Executor in February 2007. But the Estate did not bring suit until nearly six years later.

But the claim was tolled during that period because the Executor of the Estate, until at least December 2010, was Kenneth Starr.

Plaintiff relies on the doctrine that the statute of limitations is tolled when "a cause of action comes to a person who, though empowered to act on the plaintiff's

14

behalf, has interests adverse to the plaintiff's,"[2] a doctrine recognized in

Massachusetts as elsewhere, informed by and/or in addition to the similar "adverse

domination" doctrine.

Under the former doctrine, "the statute therefore is tolled during the time one

person represents both sides of a conflicting claim."  *Yager*, 123 F.2d at 47.  The

policy underlying this doctrine is that "rights ought not to be predicated upon the

theoretical but practically inconceivable possibility that a dishonest trustee would

expose his dishonesty in an action to right the fraud he had committed."  *Simmons*

*v. Friday*, 359 Mo. 812, 824, 224 S.W.2d 90 (1949).

Under the analogous "adverse domination" doctrine, knowledge of facts

pertinent to limitations in the possession of an agent of a business entity will not be

imputed to the principal where the agent is adverse to the principal or involved in

the wrongdoing. *Aiello v. Aiello,* 447 Mass. 388, 399–406 (2006), (Massachusetts

law).

While the Massachusetts Courts have not expressly[3] addressed the issue, the

prevailing rule is that the adverse domination doctrine applies not only to claims

---

[2] *Demoulas v. Demoulas Super Markets, Inc.*, 424 Mass. 501, 523 n.29 677 N.E.2d
159 (1997)(citing *Bremer v. Williams,* 210 Mass. 256, 258, 96 N.E. 687 (1911)).
*Accord, e.g., Yager v. Liberty Royalties Corp.*, 123 F.2d 44 (10th Cir. 1941)
(applying Oklahoma law);  *O'Keefe v. Darnell*, 192 F.Supp.2d 1351 (M.D. Fla.
2002) (applying Kansas law) (claims belonging to estate tolled during period of
time wrongdoer was administering the estate).

against the person dominating the business entity, but also to claims against outside persons.[4]  And while some of these outside persons could properly characterized as co-conspirators with a high level of culpability, many of them were parties charged with mere negligence, such as accountants.[5]

In the matter at bar, there simply was no person who could have brought the claim against Citibank until Plaintiff was appointed Executor of the Estate in January 2011.   It was an "inconceivable possibility that a dishonest" executor, such as Mr. Starr, would "expose his dishonesty in an action" against Citibank.

[3] In *Demoulas*, the court did apply the doctrine to persons who were not on the specific board of directors of the entity owning the claims, although they were characterized as co-conspirators.  *Demoulas,* 424 Mass. at 522–523.  *See also Passatempo v. McMenimen*, 461 Mass. 279, 290 n.19, 960 N.E.2d 275 (2012) (explaining that *DeMoulas* applied the adverse domination doctrine, but not the fraudulent concealment doctrine, to toll claims against persons other than the persons in control of the business entity).

[4] *See Bornstein v. Poulos,* 793 F.2d 444, 447–49 (1st Cir.1986) (attorney); *Mosesian v. Peat, Marwick, Mitchell & Co.,* 727 F.2d 873, 879 (9th Cir.1984), *cert. denied,* 469 U.S. 932 (1984) (auditors); *IIT v. Cornfeld,* 619 F.2d 909, 930 (2d Cir. 1980) (accountants, stockbrokers, underwriters);  *BCCI Holdings (Luxembourg), S.A. v. Clifford,* 964 F. Supp. 468, 480–81 & n. 9 (D.D.C.1997) (applying D.C. law); *Resolution Trust Corp. v. Farmer*, 865. 1143, 1158 (E.D. Pa. 1994) (finding *Gardner* more persuasive than the contrary Fifth Circuit opinion in *Shrader & York, infra*); *Resolution Trust Corp. v. Gardner,* 798 F.Supp. 790, 795 (D.D.C.1992) (applying federal law) (citing cases); *In re Greater Southeast Community Hosp. Corp. I*, 353 B.R. 324, 351 (Bankr. D.D.C. 2006).  *But see Fed. Deposit Ins. Corp. v. Shrader & York,* 991 F.2d 216 (5th Cir.1993), (holding, without analysis or citation to authority, that adverse domination doctrine does not apply to claims against outsiders).

[5] *See, e.g.,  Mosesian.,* 727 F.2d at 879  (auditors); *Cornfeld,* 619 F.2d at  930 (accountants, among others).

16

*Simmons,* 359 Mo. at 824.  The Estate was adversely dominated by Mr. Starr at all times until his resignation in December 2010, and there was no person who could have brought the claim until Plaintiff's appointment as Executor in January 2011.

The fact that the POA could have been retrieved during the course of an investigation from the public records of Dukes County, Massachusetts, argued by Citibank to be relevant, is immaterial.  At all times until January 2011, Plaintiff was merely a beneficiary of the Estate, and had no power to act on behalf of the Estate – that power rested exclusively in the hands of Mr. Starr, as Executor. Moreover, until the revelations about Mr. Starr became public in mid-2010, Plaintiff had no reason to conduct any investigation – he believed that the financial affairs of the Estate were being competently managed by Mr. Starr, who had managed Buchwald's finances since the 1980s.

### C.  The District Court Erred in Denying Plaintiff Leave to File the Proposed FAC

The district court erred as a matter of law in dismissing the action with prejudice because an amendment would not have been futile.  Even if the district court were correct in dismissing the initial Complaint, the proposed FAC cured any defects in that initial pleading.

17

## 1. The District Court Was Required, When Faced With a Timely Motion Under Rules 59(e) and 15(c) to Grant Leave to File a Non-Futile Complaint

It is well settled in this Circuit that it is an abuse of discretion to dismiss a complaint with prejudice when an amendment would not have been futile. If the requirements for amendment under Rule 15(a) have been met, but dismissal was nonetheless effected with prejudice, the "clear error" standard of Rule 59(e) will have been satisfied as a matter of law.

As explained by this Court in *Belizan v. Hershon*, 434 F.3d 579 (D.C. Cir. 2006):

> The standard for dismissing a complaint with prejudice is high: "dismissal *with prejudice* is warranted only when a trial court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Firestone,* 76 F.3d at 1209 (internal quotation marks omitted). Therefore, a complaint that omits certain essential facts and thus fails to state a claim warrants dismissal pursuant to Rule 12(b)(6) but not dismissal with prejudice.

*Id*. at 583 (emphasis in original). Similarly, the Court explained in *Firestone*:

> A dismissal *with prejudice* is warranted only when a trial court "determines that 'the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency.' " *Jarrell v. United States Postal Serv.,* 753 F.2d 1088, 1091 (D.C.Cir.1985) (quoting *Bonanno v. Thomas,* 309 F.2d 320, 322 (9th Cir.1962)).

> Turning then to the Rule 15(a) issue, we find error in the district court's complete failure to provide reasons for refusing to grant leave to amend. The Supreme Court stated in *Foman* that while the decision to grant or deny leave to amend is within the trial court's discretion, "outright refusal to grant the leave without any justifying reason appearing for the denial is not an

18

exercise of discretion; it is merely abuse of that discretion and inconsistent with the spirit of the Federal Rules." 371 U.S. at 182, 83 S.Ct. at 230. We too have emphasized that a proper exercise of discretion requires that the district court provide reasons. *See Parker v. Baltimore & Ohio R.R.*, 652 F.2d 1012, 1018, 1020 (D.C.Cir.1981) (reversing district court's denial of leave to amend, and remanding to the district court either to grant plaintiff leave to amend or provide sufficient reasons for its denial) (emphasis added).

76 F.3d at 1209 (emphasis in original).

In holding that Plaintiffs failed to meet the requirements of Rule 59(e), the district court reasoned that it was not required to grant leave to file a proposed complaint presented after the entry of judgment, regardless of whether it was futile or whether there were other specific grounds (such as prejudice or undue delay) for refusal.  The district court relied on a string of decisions from other Circuits. Memorandum Opinion, A-170.

But in so doing, the district court overlooked a considerable body of modern decisions from this Court holding that the standard is met when an action is dismissed with prejudice, and it would not be futile to proffer an amendment to cure any defects cited by the district court with the initial complaint. *Belizan v. Hershon*, 434 F.3d at 583; *Caribbean Broadcasting System, Ltd. v. Cable & Wireless P.L.C.*, 148 F.3d 1080, 1083 (D.C. Cir. 1998)  *Firestone*, 76 F.3d at 1208. In other words, if a proposed amendment would meet the criteria applicable under Rule 15(c), the Rule 59(e) standard has been met, as a matter of law, if the trial

19

court dismisses the action *with* prejudice.   *See, e.g., Caribbean Broadcasting System*, 148 F.3d at 1083 ("it is an abuse of discretion to deny leave to amend [without giving a] sufficient reason").

    *Rollins v. Wackenhut Servs., Inc.*, 703 F.3d 122 (D.C. Cir. 2012), cited by the district court, is not to the contrary.  In *Rollins*, there was a cursory request for leave to amend contained in an opposition memorandum and no proposed amended complaint.  In the matter at bar, in contrast, Plaintiff filed a formal motion pursuant to  Rules 15(a) and 59(e), as in *Belizan*, *Caribbean Broadcasting*, and *Firestone*.

### 2.  The Proposed FAC Was Not Futile

#### a.  The Additional Proffered Factual Allegations Cured any Defect in the Negligence claim

    The gravamen of the district court's holding in dismissing the negligence claim as initially pleaded was that the relevant tolling doctrine would not be applicable to a merely negligent outside party, such as Citigroup, which itself did not serve as an executor, trustee or other fiduciary.  Even if this Court were to hold that the district court was correct, that holding does not speak to a set of facts in which the defendant has actual or constructive knowledge of the abdication of duty by the fiduciary. The district court did not reach the question of whether Plaintiff's claims against Citibank would be tolled during the pendency of the Starr

executorship if Citibank had constructive knowledge that Starr had engaged in irregular practices with respect to the affairs of the decedent.

In the Proposed FAC, Plaintiff has alleged that Starr's staff presented a forged check to Citibank within weeks after the opening of the HELOC, purporting to bear Buchwald's signature; that Citibank properly recognized as a forgery and rejected it due to its "irregular signature." Proposed FAC, ¶ 29, A-98. These events put Citibank on notice of Starr's fraudulent conduct, to the extent that the HELOC itself was not sufficient to do so. Proposed FAC, ¶ 32, A-99. Plaintiff has further supplemented his factual allegations to plead that Starr, who operated an investment advisory firm with a substantial portfolio of investments under his control, had an extensive and valuable banking relationship with Citibank. *Id*., ¶ 14, A-95-96.

In evaluating the futility of the proposed amendment, Plaintiff's factual allegations were required to be accepted as true, *Atherton v. D.C. Office of the Mayor,* 567 F.3d 672, 681 (D.C. Cir. 2009), and Plaintiff was entitled to all reasonable inferences that may be drawn from his pleadings. *LaRoque v. Holder*, 650 F.3d 777, 785 (D.C. Cir. 2011).

These additional allegations were sufficient, for pleading purposes, to support an inference that Citibank had actual or constructive knowledge of Starr's defalcations, such that Plaintiff may rely on the applicable tolling doctrine during

21

the pendency of Starr's executorship even under the more narrow construction of

that doctrine applied by the district court.

### b.  The District Court Erred in Holding that Plaintiff Lacked Standing to Bring the Proposed Declaratory Judgment Claim

The federal district courts have authority to issue declaratory judgments.

That authority is derived from 28 U.S.C. § 2201(a), which provides, in pertinent

part, as follows:

> In a case of actual controversy within its jurisdiction…, any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

Section 2201(a) expressly requires only that there be an "actual controversy." This

requirement has been interpreted by the courts as synonymous with the

requirements of constitutional standing in any matter, namely, that there be a "case

or controversy." *See Mama Cares Foundation v. Nutriset Societe Par Actions*

*Cimplifiee*, 825 F.Supp.2d 178, 181 (D.D.C. 2011) (*(quoting SanDisk Corp. v.*

*STMicroelectronics,* 480 F.3d 1372, 1378 (Fed.Cir.2007)) ("The 'actual

controversy' requirement of the Declaratory Judgment Act is rooted in Article III

of the Constitution, which provides for federal jurisdiction over only 'cases and

controversies' ").

"To demonstrate standing under Article III of the Constitution, [the plaintiff] must show an injury in fact caused by the defendant and redressable by judicial relief." *Singh v. Napolitano,* 710 F.Supp.2d 123, 128 (D.D.C.2010) (quoting *Stilwell v. Office of Thrift Supervision,* 569 F.3d 514, 518 (D.C.Cir.2009)) (internal quotation marks and other citation omitted). "A qualifying injury must be 'concrete and particularized' and either 'actual or imminent.' " *Id.* (quoting *City of Dania Beach, Fla. v. FAA,* 485 F.3d 1181, 1185 (D.C.Cir.2007)) (citation omitted). The threshold for establishing an "injury in fact" is "a low one." *Shaffer v. Defense Intelligence Agency*, 601 F.Supp.2d 16, 23 (D.D.C. 2009).

In the matter at bar, the Estate has an actual "injury in fact" – it has been injured by paying the alleged balance due on a line of credit that was void as a matter of law regardless of whether it, and related instruments, were facially valid. And it is not disputed that Plaintiff is the proper party, nor that plaintiff is injured.

While the district court did not provide analysis as to why there was no longer a case or controversy between the parties, Citibank, before the district court, raised the question of mootness.   Citibank contended that the declaratory judgment claim was rendered moot by the payoff of the HELOC. But this is simply wrong.

The alleged debtor's act of paying off an alleged debt obligation does not somehow extinguish all rights the alleged debtor had vis-à-vis the lender, including the right to seek damages and/or declaratory relief concerning their legal

23

relationship, or even to challenge the very existence of the obligation. In *Shirley v. Wachovia Mortg. FSB*, 2011 WL 855943 (N.D. Cal. Mar. 9, 2011), the court rejected an argument by a lender that "that Plaintiffs' claim was rendered moot when Plaintiffs paid off the loan, and the court cannot 'rescind a loan that no longer exists.'" *Id*. at *5. The court held that the "act of caution" of paying off the loan did not extinguish any rights of rescission the plaintiffs had. *Id*. Similarly, in *Pierce v. Emigrant Mortg. Co.*, 463 F.Supp.2d 221 (D. Conn. 2006), the court "f[ound] no legal basis for the defendants' contention" that the plaintiff waived declaratory and damages claims against the lender by virtue of having paid off the note. *Id*. at 226.3 *Accord Berry v. Myslinski*, 2012 WL 6178157, *3 (Mich. App. Dec. 11, 2012) ("Even though plaintiff paid off the mortgage, this Court could still 'fashion a remedy' if it concluded that the trial court clearly erred and defendant's foreclosure was improper," and "contrary to defendant's argument, plaintiff did not acknowledge the validity of the mortgage by paying it off").

Additionally, Citibank is estopped from asserting that Plaintiff has waived any claims by virtue of paying the outstanding balance on the HELOC. Plaintiff has expressly pleaded that Plaintiff paid off the HELOC only after receiving assurances (which were in writing) that Plaintiff would not be waiving any claims against Citibank by doing so. Proposed FAC, ¶ 43, A-101.

Finally, even if the district court were correct that it lacked subject matter

24

jurisdiction to entertain the proposed declaratory judgment claim, it should have

remanded the action to the Superior Court for the District of Columbia, in which

the action was initially commenced.  28 U.S.C. § 1447(c).  *See Republic of*

*Venezuela v. Philip Morris Inc.*, 287 F.3d 192, 196 (D.C. Cir. 2002) ("When it

appears that a district court lacks subject matter jurisdiction over a case that has

been removed from a state court, the district court must remand the case").

     *Ten Persons of the Commonwealth v. Fellsway Development, LLC*, 460

Mass. 366, 951 N.E.2d 648 (2011), cited by the district court is inapposite.  As a

preliminary matter, the question of whether the district court had subject matter

jurisdiction was one of federal procedural law, and a Massachusetts state court

decision is, at most, persuasive authority.  Second, *Ten Persons*  spoke only as to

which persons have statutory standing to sue under a particular Massachusetts

environmental statute. In the matter at bar, there was no question of statutory

standing raised at all. Additionally, the issue is not whether Plaintiff is the proper

*person* to seek declaratory relief – the question raised by Citibank below was one

of mootness, *i.e.*, whether there is no longer a controversy to be resolved by

declaratory relief in light of the repayment of the HELOC.

     Like the plaintiffs in the *Shirley, Pierce* and *Berry*, cited above, Plaintiff did

not pay off the HELOC because he wanted to – he did so out of necessity in order

to effectuate the sale of the underlying property. There is simply no authority for

the suggestion advanced by Citibank that the payoff of the HELOC constituted a waiver of any legal rights the Estate had prior to the payoff, particularly in light of the Estate's express reservation of rights agreed to with Citibank. Paying off the note was a merely prudent act that made sense for both Plaintiff and Citibank, and should not, and cannot, be construed as effecting a waiver of any rights.

## VI.    CONCLUSION

For the foregoing reasons, Plaintiff respectfully prays that this Court vacate the district court's dismissal of the action, and remand the actions to the district court with instructions that it proceed to discovery and trial.

Dated:  March 12, 2014                              Respectfully Submitted,

                                                   _____/s/ Matthew E. Miller_____
                                                   Jonathan W. Cuneo
                                                   Matthew E. Miller
                                                   CUNEO GILBERT & LaDUCA, LLP
                                                   507 C Street, NE
                                                   Washington, DC 20002
                                                   Phone:  (202) 789-3960

                                                   *Attorney for Plaintiff-Appellant*

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing brief complies with Rule 32(a)(7)(B)(i) of

the Federal Rules of Appellate Procedure and that, according to the word count of

the preparer's word processing system, the brief contains a total of 5,946 words.

_____/s/ Matthew E. Miller_____
Matthew E. Miller

## CERTIFICATE OF SERVICE

   I hereby certify that on March 12, 2014, a copy of the forgoing document was filed electronically with this Court, which will transmit notice of this filing to all parties by operation of the Court's electronic filing system, and there are no parties who have appeared in this proceeding who have not consented to electronic service.

Dated: March 12, 2014      /s/ Matthew E. Miller
              Matthew E. Miller

28